PAGES 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SALLIE KIM

ROY NELSON, III, ET AL.,           )
                                   )
            PLAINTIFFS,            )
                                   )
  VS.                              ) NO. CASE NO. 16-7222 SK
                                   )
CITY OF HAYWARD, ET AL.,           )
                                   )  SAN FRANCISCO, CALIFORNIA
            DEFENDANT.             )  MONDAY
                                   )  FEBRUARY 25, 2019
_____)


**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  9:34 A.M. - 10:01 A.M. AND 10:29 A.M. - 10:31 A.M.**


**APPEARANCES**:

**FOR PLAINTIFF**          THE LAW OFFICES OF JOHN L. BURRIS
                          AIRPORT CORPORATE CENTRE
                          7677 OAKPORT STREET, SUITE 1120
                          OAKLAND, CALIFORNIA 94621
                   **BY:  ADANTE POINTER, ESQUIRE**
                          **PATRICK BUELNA, ESQUIRE**


**FOR DEFENDANT**          HAYWARD CITY ATTORNEY'S OFFICE
                          777 B STREET, SUITE 4
                          HAYWARD, CALIFORNIA 94541
                   **BY:  RAYMOND R. ROLLAN, ESQUIRE**




*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                *RETIRED OFFICIAL COURT REPORTER, USDC*

2

```
 1   MONDAY, FEBRUARY 25, 2019                        9:34 A.M.

 2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

 3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

 4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

 5                            ---O0O---

 6                           PROCEEDINGS

 7           THE CLERK:  CALLING CRIMINAL MATTER -- SORRY -- CIVIL

 8   MATTER 16-7222, NELSON, ET AL., VERSUS CITY OF HAYWARD.

 9           SO IN CRIMINAL BRAIN.

10           MR. POINTER:  GOOD MORNING, YOUR HONOR.  ADANTE

11   POINTER AND PATRICK BUELNA ON BEHALF OF THE PLAINTIFF IN THIS

12   MATTER.

13           THE COURT:  GOOD MORNING.

14           MR. BUELNA:  GOOD MORNING, YOUR HONOR.

15           THE COURT:  GOOD MORNING.

16           MR. ROLLAN:  GOOD MORNING, YOUR HONOR.  RAYMOND

17   ROLLAN ON BEHALF OF THE CITY OF HAYWARD.

18           THE COURT:  GOOD MORNING.

19           I DON'T MIND HAVING TWO PEOPLE TALK, BUT I DON'T WANT

20   THEM TALKING AT THE SAME TIME.  OR IF YOU WANT TO SPLIT THEM

21   UP, JUST LET ME KNOW.  IS THAT HOW YOU'RE PLANNING TO HANDLE

22   IT, MR. BUELNA AND MR. POINTER?

23           MR. POINTER:  YES, YOUR HONOR.  MR. BUELNA WILL TAKE

24   THE LEAD HERE.

25           THE COURT:  OKAY.  THANK YOU.
```

```
 1              OKAY.  SO THANK YOU FOR SUBMITTING THE PAPERWORK.  AS
 2   YOU CAN SEE, I'VE HAD A CHANCE TO READ IT, AND WE'VE TABBED IT
 3   AND LOOKED AT IT VERY CLOSELY.  I JUST HAVE -- LET ME START
 4   WITH A COUPLE OF QUESTIONS, BUT THEN I'LL LET PEOPLE SAY WHAT
 5   THEY WANT TO SAY.  I WANT TO GIVE EACH SIDE A CHANCE TO REALLY
 6   JUST SAY WHAT YOU WANT TO SAY.  BUT IF I DON'T ASK THE
 7   QUESTIONS WHEN THEY'RE -- WHEN YOU FIRST GET UP HERE, I WON'T
 8   REMEMBER THEM LATER ON, EVEN THOUGH I'VE GOT THEM WRITTEN DOWN.
 9              SO, LET ME FIRST GO TO AN ISSUE -- THE ISSUE OF
10   CAUSATION.  AND, MR. BUELNA, DO YOU AGREE THAT CAUSATION IN
11   THIS PARTICULAR SITUATION IS A DISPUTED ISSUE OF FACT?  IN
12   OTHER WORDS, ARE YOU ONLY MOVING WITH REGARD TO THE ISSUE OF
13   THE VIOLATION OF THE FOURTH AMENDMENT, OR ARE YOU MOVING WITH
14   REGARD TO EVERYTHING?
15         MR. BUELNA:  YES, YOUR HONOR, THAT'S A GOOD QUESTION
16   AND IMPORTANT DISTINCTION.  WE AGREE THAT CAUSATION OF THE
17   DEATH IS A DISPUTED ISSUE OF FACT.  HOWEVER, CAUSATION, AS YOU
18   MENTION, OF THE VIOLATION OF THE FOURTH AMENDMENT, IS AN
19   UNDISPUTED FACT.
20         THE COURT:  OKAY.  GREAT.  OKAY.  AND, MR. ROLLAN, DO
21   YOU AGREE WITH THAT ISSUE AS WELL, THAT CAUSATION ITSELF IS A
22   DISPUTED ISSUE OF FACT?
23         MR. ROLLAN:  YES, YOUR HONOR.
24         THE COURT:  OKAY.  SO, IN OTHER WORDS, BOTH SIDES ARE
25   ASKING ME -- YOU'VE CROSS MOVED FOR SUMMARY JUDGMENT, BUT
```

1   YOU'RE REALLY ASKING FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE

2   OF THE FOURTH AMENDMENT VIOLATION; IS THAT CORRECT?

3              **MR. BUELNA:**  THAT'S CORRECT, YOUR HONOR.

4              **THE COURT:**  OKAY.  ALL RIGHT.  GOOD.

5              OKAY.  SO, LET ME ASK ABOUT THIS ISSUE OF HOW TO

6   INTERPRET THE EVIDENCE, BECAUSE, IN THINKING ABOUT THIS CASE,

7   IT STRUCK ME THAT IT'S UNUSUAL FROM A LOT OF CASES WHERE YOU

8   HAVE TWO DIFFERENT POINTS OF VIEW.  YOU HAVE EITHER ONLOOKERS

9   OR THE PLAINTIFF HIMSELF TELLING WHAT HAPPENED, AND THEN YOU

10  HAVE THE DEFENDANTS TELLING WHAT HAPPENED.  HERE ALL WE HAVE IS

11  VIDEO EVIDENCE AND THE DEFENDANTS' VERSION OF THE STORY.

12             AND SO IN THIS SITUATION, IT LOOKS -- ONE PERSON

13  COULD SAY THE FACTS ARE UNDISPUTED IN THAT THE EVIDENCE THAT'S

14  SUBMITTED IS LIMITED.  IN OTHER WORDS, IT'S EITHER THE VIDEO

15  EVIDENCE OR THE OFFICERS, WHAT THE OFFICERS SAY.

16             BUT, ON THE OTHER HAND, WHEN I THOUGHT ABOUT IT SOME

17  MORE, IT OCCURRED TO ME THAT -- AND, ACTUALLY, AFTER REVIEWING

18  THE VIDEOS, IT OCCURRED TO ME IN SOME WAYS IT IS DISPUTED

19  BECAUSE THE VIDEOS THEMSELVES DON'T ALWAYS PINPOINT THE ISSUE

20  THAT THE OFFICERS ARE TALKING ABOUT.  IN OTHER WORDS, THE ISSUE

21  ABOUT HOLDING THE HOOD UP FOR MR. NELSON; YOU KNOW, WHETHER THE

22  OFFICER WAS DOING THAT IN SUCH A WAY THAT LET HIM BREATHE OR

23  WHETHER IT WAS ACTUALLY CAUSING HIM TO CHOKE.  WHEN I LOOKED AT

24  THE VIDEOS, I COULDN'T TELL.  IN OTHER WORDS, I LISTENED -- I

25  SAW WHAT SHE SAID ABOUT -- IT WAS -- IT WAS SHE, RIGHT?

1          **MR. ROLLAN:**  YES.

2          **THE COURT:**  -- WHAT SHE SAID, THE OFFICER SAID ABOUT

3    LIFTING THE HOOD UP, VERSUS WHAT THE VIDEO SHOWED.  AND I

4    THOUGHT A REASONABLE TRIER OF FACT COULD LOOK AT THE VIDEO AND

5    HEAR WHAT THE OFFICER SAID, BUT IT'S NOT NECESSARILY UNDISPUTED

6    AS TO WHAT HAPPENED IN THAT SITUATION.  THAT WAS MY CONCERN

7    ABOUT THAT TYPE OF EVIDENTIARY CLASH.  THAT'S WHAT -- AND,

8    MR. BUELNA, MAYBE TELL ME HOW AM I SUPPOSED TO GET AROUND THAT

9    ON A MOTION FOR SUMMARY JUDGMENT, OR WHETHER IT'S SOMETHING I

10   HAVE TO KICK TO THE JURY.

11         **MR. BUELNA:**  PARTICULARLY, I GUESS, IF YOU'RE ASKING

12   ABOUT THIS FACT, I THINK THAT ONE OF THEM -- I MEAN, YOUR

13   HONOR, A SUMMARY JUDGMENT, YOU HAVE TO TAKE REASONABLE

14   INFERENCES FROM THE FACTS -- RIGHT -- AND IF WE'RE MOVING FOR

15   SUMMARY JUDGMENT, IN DEFENDANT'S FAVOR.  BUT YOU DON'T HAVE TO

16   TAKE IMPLAUSIBLE INFERENCES.

17         AND IN THE CASE OF THE HOOD AND THE SWEATSHIRT, YOU

18   SEE DEFENDANT HALL IN THE VIDEOS PUSHING HIS HEAD DOWN.  SHE

19   TESTIFIED AT DEPOSITION THAT SHE WAS SOMEHOW HOLDING HIS HEAD

20   UP BY PUSHING IT DOWN, AS WELL AS JUST MERELY HOLDING ON TO THE

21   SWEATSHIRT.  BUT WHEN THEY FLIP HIM OVER, THE SWEATSHIRT IS SO

22   CAUGHT UP IN HIS NECK -- YOU CAN BARELY SEE IT -- SHE HAS TO

23   PULL IT OUT OF HIS NECK, AND THAT'S ON VIDEO.

24         AND SHE ALSO SAYS EXPLICITLY -- IT'S AN ADMISSION --

25   THAT HE KNOCKED OUT BECAUSE THE SWEATSHIRT WAS CHOKING HIM.

1   AND I THINK HER -- HER PULLING ON THAT SWEATSHIRT OR HOLDING

2   IT, EVEN, A REASONABLE OFFICER WOULD KNOW THAT THAT WOULD CAUSE

3   RISK THAT HE WOULD BE -- ESPECIALLY AFTER HE SAID, I CAN'T

4   BREATHE, THAT HE COULD BE SUFFOCATING.

5           **THE COURT:**  AND SO YOUR ARGUMENT STRIKES ME AS BEING

6   A REASON WHY I SHOULD DENY THE DEFENDANT'S MOTION FOR SUMMARY

7   JUDGMENT, BUT NOT NECESSARILY GRANT YOUR MOTION FOR SUMMARY

8   JUDGMENT.  I MEAN, THIS IS AN UNUSUAL SITUATION WHICH BOTH

9   SIDES HAVE CROSS MOVED ON THIS ISSUE, BUT USUALLY -- USUALLY,

10  WE'RE IN A SITUATION WHERE THE DEFENDANTS ARE MOVING, AND THE

11  PLAINTIFFS ARE SAYING, NO, NO, SEND IT TO THE JURY.

12          WHAT YOU'RE TELLING ME, AND THE THING I'M STRUGGLING

13  WITH IS, IS THIS ACTUALLY SOMETHING THAT I CAN DECIDE AS THE

14  JUDGE ON A SUMMARY JUDGMENT MOTION, AS OPPOSED TO SAYING, I

15  AGREE THAT THERE ARE DIFFERENT INTERPRETATIONS ABOUT WHAT YOU

16  SEE FROM THE VIDEO AND WHAT YOU HEAR FROM THE OFFICER, AND

17  THEREFORE, I HAVE TO ALLOW THE JURY TO DECIDE IT, BECAUSE WHEN

18  I READ CASE LAW, THE CASE LAW SAYS, YOU KNOW, REASONABLENESS OF

19  THE OFFICER'S ACTION, AND THIS WHOLE ISSUE OF EXCESSIVE FORCE

20  RARELY, RARELY, WHEN THERE'S ANY KIND OF DISPUTE ABOUT WHAT

21  ACTUALLY HAPPENED, IT'S GOING TO BE DECIDED BY THE COURT.  IN

22  OTHER WORDS, ONLY IF THERE'S TRULY NO DISPUTE ABOUT WHAT

23  HAPPENED, CAN THE JUDGE DECIDE ON A SUMMARY MOTION.

24          DO YOU SEE WHAT I'M SAYING?

25          **MR. BUELNA:**  I DO, YOUR HONOR, AND I THINK MAYBE --

1    SO FOR SOME OF THE OFFICERS, MAYBE, I THINK IT COULD MOVE

2    FORWARD, OBVIOUSLY WITH DISPUTED MATERIAL FACTS.  BUT I THINK

3    WITH DEFENDANT SHANNON, HIS VIDEO -- THE VIDEO EVIDENCE IS SO

4    OVERWHELMING, THAT I THINK THAT THERE IS A GOOD REASON TO MOVE

5    OR TO GRANT SUMMARY JUDGMENT ON HIS EXCESSIVE FORCE, BECAUSE AS

6    PLAINTIFF SHOWED IN STILL IMAGES AND ALSO IN THE VIDEO,

7    DEFENDANT SHANNON HAS BOTH OF HIS KNEES ON TOP OF MR. NELSON AS

8    HE'S EXPLAINING THAT HE CAN'T BREATHE.

9            AND THEN EVEN AFTERWARDS, AFTER THEY NOTE HE'S

10   UNCONSCIOUS AND NOT BREATHING, HE ORDERS OTHER OFFICERS TO

11   CONTINUE TO APPLYING THE WRAP, AND HE CONTINUALLY STILL PRESSES

12   UPON MR. NELSON'S BACK, WHICH IS A CLEAR VIOLATION OF HIS -- OF

13   MR. NELSON'S FOURTH AMENDMENT RIGHTS.

14           AND THE VIDEO -- I THINK IT'S UNDISPUTED THAT HE'S ON

15   TOP OF MR. NELSON.  MR. NELSON CAN'T BREATHE.  THEY CONTINUED

16   TO USE FORCE.  HE SAYS -- MICHELLE HALL, DEFENDANT HALL, SAYS,

17   HEY, HE DOESN'T LOOK LIKE HE'S BREATHING, OR SOMETHING TO THAT

18   EFFECT; HE'S UNCONSCIOUS, HEY GUYS -- AND SHANNON DIRECTLY

19   AFTERWARDS SAYS, CONTINUE PUTTING ON THE WRAP, AND CONTINUES TO

20   APPLY PRESSURE TO HIS BACK.

21           AND I THINK RIGHT THERE THAT'S UNDISPUTED, THAT

22   TRANSACTION OF EVENTS, AND I THINK THAT IS ENOUGH TO GRANT

23   SUMMARY JUDGMENT ON, THAT'S A VIOLATION OF EXCESSIVE FORCE --

24   OR VIOLATION OF THE FOURTH AMENDMENT.

25           **THE COURT:**  OKAY.  LET ME HEAR FROM MR. ROLLAN ON

1   THAT ISSUE.  THANK YOU.  I'LL COME BACK TO YOU AND LET YOU SAY

2   WHAT YOU WANT TO SAY, COME BACK, AS WELL.

3           **MR. ROLLAN:**  THANK YOU, YOUR HONOR.  AND WE DO AGREE

4   WITH THE COURT'S ASSESSMENT THAT, BASED ON THE VIDEO EVIDENCE

5   AND BASED ON THE TESTIMONY OF THE OFFICERS, THAT THOSE TWO

6   PIECES OF EVIDENCE DON'T NECESSARILY CONTRADICT EACH OTHER, IN

7   THAT THE VIDEO EVIDENCE AND THE BODY CAM VIDEOS DON'T

8   NECESSARILY SHOW HOW MUCH PRESSURE WAS PLACED ON MR. NELSON.

9           TRUE, THE VIDEO SHOWS OFFICER SHANNON WAS ON TOP OF

10  MR. NELSON'S UPPER BACK AREA AND SHOULDER AREA, BUT THE

11  TESTIMONY REALLY DOES NOT -- HIS TESTIMONY THAT HE DIDN'T HAVE

12  HIS ENTIRE BODY WEIGHT ON MR. NELSON AT ANY GIVEN TIME, THAT

13  DOES NOT NECESSARILY CREATE A DISPUTE OF MATERIAL FACT.

14          **THE COURT:**  HOW COULD HE NOT HAVE HIS ENTIRE BODY

15  WEIGHT ON HIM IF HE -- IF BOTH HIS KNEES ARE ON HIS BACK?

16          **MR. ROLLAN:**  SO THE VIDEO DOESN'T CLEARLY SHOW THAT

17  BOTH OF HIS KNEES WERE ON -- DIRECTLY IN MR. NELSON'S BACK.

18          **THE COURT:**  SO YOU DISPUTE THAT.  OKAY.

19          **MR. ROLLAN:**  RIGHT.

20          **THE COURT:**  OKAY.

21          **MR. ROLLAN:**  IN FACT, OFFICER SHANNON, IN PARTS OF

22  THE VIDEO, SHOWS ONLY ONE OF HIS KNEES IS ON ON MR. NELSON'S

23  BACK.  AND HE TESTIFIED THAT EVEN WHEN HE PUT PRESSURE ON

24  MR. NELSON'S BACK, IT WASN'T NECESSARILY THAT HE WAS LEANING

25  INTO MR. NELSON ENTIRELY, THAT HE HAD -- HE WAS IN A POSTURE

1  THAT ALLOWED HIM TO EASILY SHIFT HIS WEIGHT SO THAT HIS ENTIRE

2  BODY WEIGHT WAS NOT PLACED ON MR. NELSON.

3  AND SO WE JUST WANTED TO CLARIFY ALSO, IN REGARDS TO

4  MR. BUELNA'S STATEMENT, THAT HE INDICATED THAT OFFICER HALL

5  ADMITTED THAT MR. NELSON WAS CHOKED AS A RESULT OF HIS SWEATER.

6  THE EVIDENCE SHOWS THAT OFFICER HALL TESTIFIED THAT SHE THINKS

7  THE SWEATER GOT TIGHT ON HIS NECK.

8  I THINK THERE'S A DISTINCTION TO BE MADE BETWEEN THE

9  PLAINTIFF'S CHARACTERIZATION THAT MR. NELSON WAS CHOKED BY

10  MS. HALL -- BY OFFICER HALL'S BEHAVIOR, VERSUS JUST A MATTER OF

11  HAVING THE SWEATER AROUND HIS NECK GET TIGHT AND NOT BY ANY

12  FORCE APPLIED BY OFFICER HALL.

13  **THE COURT:**  OKAY.  SO WHAT DO YOU THINK ABOUT

14  MR. BUELNA'S ARGUMENT THAT, WITH REGARD TO OFFICER SHANNON, THE

15  MINUTE MR. NELSON SAYS, I CAN'T BREATHE -- AFTER MR. NELSON

16  SAYS, I CAN'T BREATHE AND AFTER OFFICER HALL SAYS, HE SEEMS

17  UNCONSCIOUS, THE DECISION TO CONTINUE APPLYING THE WRAP AND NOT

18  TURN MR. NELSON OVER FOR ONE MINUTE AND 20 SECONDS IS A

19  PROBLEM, FOR OFFICER SHANNON AT LEAST?

20  **MR. ROLLAN:**  WELL, I THINK, YOUR HONOR, AS POINTED

21  OUT IN DEFENDANT'S MOVING PAPERS, THAT DECISION WAS REASONABLE

22  UNDER THE CIRCUMSTANCES BECAUSE THE OFFICERS LOOKED AT THE

23  TOTALITY OF THE CIRCUMSTANCES.

24  MR. NELSON REFUSED TO COMPLY WITH THE OFFICERS ORDERS

25  NOT TO KICK THE CAR, AND THEN WHEN HE GOT ON THE GROUND, HE WAS

1  TENSING AND MOVING HIS BODY SO THAT OFFICERS AT THE BOTTOM HAD

2  A HARD TIME APPLYING THE ANKLE -- A WRAP RESTRAINT.

3       SO OFFICER SHANNON'S DECISION TO ORDER THE OTHER

4  OFFICERS TO COMPLETE THE LOWER PORTION OF THE WRAP DEVICE WAS

5  REALLY MEANT TO ADDRESS ANY OFFICER SAFETY CONCERNS THAT

6  MR. NELSON MAY HAVE PRESENTED TO THE OFFICERS.

7       ANOTHER FACTOR THAT CONTRIBUTED TO THAT WAS THAT

8  MR. NELSON WAS 6 FEET 6-2, AND HIS WEIGHT WAS 320 POUNDS,

9  BIGGER THAN ANY OF THE OTHER OFFICERS ON SCENE.

10      SO CONCERNING THE TOTALITY OF THOSE CIRCUMSTANCES

11  MR.-- OFFICER SHANNON'S DIRECTION TO FULLY APPLY THE LEG AND

12  THE ANKLE RESTRAINT BEFORE TURNING MR. NELSON OVER WAS

13  REASONABLE BECAUSE HE WAS CONCERNED THAT MR. NELSON MIGHT HAVE

14  JUST BEEN BAITING THEM BY FAKING TO BE UNCONSCIOUS.

15      **THE COURT:**  SO I FIND IT VERY, VERY DIFFICULT TO

16  BELIEVE THAT ANY JUROR ANYWHERE IS GOING TO FIND OFFICER

17  SHANNON NOT LIABLE FOR A VIOLATION OF FOURTH AMENDMENT RIGHTS

18  UNDER THESE SET OF CIRCUMSTANCES.  MY ONLY QUESTION IS, IS THAT

19  THE STANDARD I APPLY ON SUMMARY JUDGMENT, OR DO I -- DO I HAVE

20  TO SEND THAT TO THE JURY?

21      I JUST CANNOT IMAGINE A JUROR IN THIS COUNTRY SAYING,

22  AFTER A PERSON SAYS HE CAN'T BREATHE AND AFTER ANOTHER OFFICER

23  NOTES THAT MR. NELSON IS UNCONSCIOUS, TO WAIT A MINUTE AND 20

24  SECONDS IS APPROPRIATE WITHOUT SOME KIND OF INTERVENING

25  MEASURE, CHECKING HIS PULSE, CHECKING TO SEE WHETHER HE HAS

1  AIRWAY BREATHING CAPACITY.  I JUST FIND THAT IMPOSSIBLE TO

2  BELIEVE.

3         I THINK WHAT I'M STRUGGLING WITH IS, IS IT JUST -- IS

4  THAT THE TEST FOR SUMMARY JUDGMENT?  DO I SAY THERE'S NO WAY

5  ANY JUROR IN THIS COUNTRY COULD FIND FOR OFFICER SHANNON ON

6  THOSE UNDISPUTED FACTS, THOSE UNDISPUTED FACTS, OR DO I SAY, I

7  HAVE TO SEND THIS TO THE JURY UNDER THOSE CIRCUMSTANCES.

8         **MR. ROLLAN:**  WELL, YOUR HONOR, I THINK AT THE VERY

9  BASELINE, PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION AS TO

10  OFFICER SHANNON SHOULD BE DENIED, AND THAT SHOULD -- THIS ISSUE

11  SHOULD GO TO THE JURY, BECAUSE IF THEY BELIEVE OFFICER

12  SHANNON'S TESTIMONY THAT HE GENUINELY BELIEVED THAT HE HAD

13  OFFICER SAFETY CONCERNS OR THAT HIS -- YOU KNOW, HE DIDN'T

14  REALLY PUT HIS ENTIRE BODY WEIGHT ON MR. NELSON, THOSE ARE ALL

15  ISSUES THAT A JURY SHOULD CONSIDER IN EVALUATING WHETHER OR NOT

16  THE FORCE HE EMPLOYED WAS EXCESSIVE UNDER THE CIRCUMSTANCES.

17         I DON'T THINK IT'S FAIR TO NECESSARILY SUMMARILY SAY

18  THAT, JUST AS A MATTER OF LAW, THAT OFFICER SHANNON'S BEHAVIOR

19  WAS EXCESSIVE AND UNCONSTITUTIONAL.  I THINK THAT, AT THE VERY

20  LEAST, SHOULD BE AN ISSUE THAT SHOULD BE PLACED BEFORE A JURY.

21         **THE COURT:**  OKAY.  SO DO EITHER THE PLAINTIFF OR

22  DEFENDANT HAVE ANY EXPERT WITNESS ON THE STANDARD OF CARE IN

23  THIS SITUATION?  I DON'T REMEMBER SEEING ANYTHING LIKE THAT IN

24  THE RECORD, BUT MAYBE YOU HAVE AND IT JUST WASN'T PRESENTED TO

25  ME.

1              **MR. BUELNA:**  WE DO, BUT I DON'T THINK WE REALLY

2   INCLUDED TOO MUCH EXPERT TESTIMONY.  I THINK -- AT LEAST FROM

3   THE PLAINTIFF'S -- AS FAR AS STANDARD OF CARE --

4              **THE COURT:**  YOU HAVE THE CAUSATION EXPERT.

5              **MR. BUELNA:**  YES, YES.

6              **THE COURT:**  ON CAUSE OF DEATH.  I UNDERSTAND.

7              **MR. BUELNA:**  WE ALSO HAVE A POLICE PRACTICES EXPERT

8   AND --

9              **THE COURT:**  OKAY.

10             **MR. BUELNA:**  -- AND SO DOES THE DEFENDANT.

11             **THE COURT:**  OKAY.

12             **MR. BUELNA:**  BUT I DON'T THINK -- I THINK I JUST WANT

13  TO ADDRESS A COUPLE OF POINTS THAT COUNSEL BROUGHT UP.

14             **THE COURT:**  SURE.

15             **MR. BUELNA:**  ONE, I WANT TO INCLUDE THIS.  ONE, WHEN

16  DEFENDANT SHANNON INSTRUCTED THEM TO FINISH PUTTING ON THE LEG

17  WRAP AFTER HE'S BEEN NOTIFIED THAT MR. NELSON HAS GONE

18  UNCONSCIOUS -- HE'S HOBBLED AT THE ANKLES AND HE'S HANDCUFFED,

19  SO ME -- THERE'S NOT EVEN A CREATIVE -- TO ME, I CAN'T EVEN

20  THINK OF A CREATIVE RISK TO THE OFFICERS THAT COULD BE POSSIBLE

21  AT THAT MOMENT.

22             AND, ALSO, HIS ACTING SERGEANT TESTIFIED AT

23  DEPOSITION UNDER SWORN TESTIMONY THAT OFFICERS ARE TRAINED THAT

24  WHEN THEY HEAR A MEDICAL DISTRESS FROM A PERSON, THEY'RE

25  SUPPOSED TO STOP APPLYING THE WRAP AND BEGIN ADDRESSING THAT

```
 1  MEDICAL DISTRESS.
 2              AND SO I WOULD ALSO CONSIDER --
 3          THE COURT:  WHICH DEPOSITION IS THAT?
 4          MR. BUELNA:  THAT'S OFFICER MCCREA.  THAT'S IN
 5  PLAINTIFF'S EXHIBIT 3.
 6          THE COURT:  OKAY.
 7          MR. BUELNA:  AND IF YOU WANT, I HAVE THE PAGE AND
 8  LINE NUMBER.
 9          THE COURT:  OKAY.
10          MR. BUELNA:  PAGE 69, LINE 21, THROUGH PAGE 70, LINE
11  7.
12          THE COURT:  OKAY.
13          MR. BUELNA:  THAT'S THE ACTING SERGEANT ON SCENE.
14              I WOULD ALSO NOTE THAT PLAINTIFF DID INCLUDE A STILL
15  SHOT OF MR. SHANNON'S KNEES, BOTH OF HIS KNEES, ON HIS BACK,
16  AND THAT WAS EXHIBIT 12.
17          THE COURT:  I THINK WHAT MR. ROLLAN WAS SAYING IS
18  WHEN YOU WATCH THE VIDEO, IT'S NOT CLEAR THAT THE OFFICER IS ON
19  MR. NELSON'S BACK WITH HIS KNEES THE ENTIRE TIME.  I MEAN,
20  THERE MIGHT BE PARTS, AND YOU COULD STILL GET A STILL
21  PHOTOGRAPH, I UNDERSTAND, BUT I'M NOT -- I'M GOING TO GO BACK
22  AND LOOK AT IT AGAIN TO SEE, BECAUSE WHEN I LOOKED AT THE
23  VIDEO, I THOUGHT, YOU KNOW, IT DIDN'T SOLVE ALL THEIR PROBLEMS
24  THAT WE THOUGHT OFFICER CAM (PHONETIC) THOUGHT IT WAS GOING TO
25  SOLVE, BECAUSE YOU CAN'T SEE EVERYTHING CLEARLY THE ENTIRE
```

```
 1   TIME.

 2          MR. BUELNA:  YOU ARE RIGHT, YOUR HONOR.  AND THAT'S

 3   WHY I -- YOU KNOW, PLAINTIFF PUT IN THE MULTIPLE BODY CAMERAS

 4   AND TRIED TO SYNCHRONIZE THEM FOR THE COURT, BECAUSE I THINK

 5   WHEN YOU LOOK AT THEM IN TOTALITY, IT'S CLEAR THAT AN

 6   OBJECTIVE -- AN OBJECTIVELY REASONABLE OFFICER WOULD HAVE

 7   ADDRESSED MR. NELSON'S MEDICAL SITUATION AND WOULD NOT HAVE

 8   CONTINUED TO COMPRESS MR. NELSON'S BACK IN ANY WAY, SHAPE, OR

 9   FORM, AND KNOWING THAT THEY'RE ALL TRAINED -- AND EVEN

10   DEFENDANT SHANNON IS TRAINED THAT -- THAT A PERSON THAT'S PRONE

11   ON THEIR BACK WITH PRESSURE UPON THEM, CAUSES RESPIRATORY

12   DISTRESS.  AND I WOULD ALSO NOTE THAT THE OFFICERS ARE TRAINED

13   THAT THIS IS AN EVEN HIGHER RISK WITH A PERSON THAT'S OBESE.

14   AND ALL OF THE OFFICERS -- AND I THINK IT'S AN UNDISPUTED

15   FACT -- NOTE THAT MR. NELSON WAS OBESE.

16          AND I JUST WANT TO ADDRESS A COUPLE OF OTHER THINGS

17   AT THE FOREFRONT OF THE DETENTION, WHICH IS MR. NELSON IS NOT

18   WANTED FOR A CRIME.  THIS IS A CALL FOR MEDICAL DISTRESS.  AND

19   WHEN THEY'RE TAKING HIM INTO CUSTODY, DEFENDANT'S PAPERS NOTED

20   THAT HE WAS DETERMINED TO BE GRAVELY DISABLED, A DANGER TO

21   HIMSELF AND A DANGER TO OTHERS.  THAT'S NOT TRUE.

22          MICHELLE HALL TESTIFIED THAT SHE DETERMINED HE WAS A

23   DANGER TO HIMSELF AND GRAVELY DISABLED, AND SO THAT'S A

24   MISREPRESENTATION OF THE RECORD.

25          ESSENTIALLY, OFFICERS ARE THERE JUST TO ACCOMMODATE
```

1    HIM TO A PSYCHIATRIC HOSPITAL.  THIS IS NOT A SITUATION WHERE

2    THEY'RE TRULY SCARED, WHICH WAS, YOU KNOW, SHOWN BY THE FACT

3    THEY DIDN'T EVEN HANDCUFF HIM.  AND WHEN HE GETS OUT, HIS

4    RESISTANCE IS NOT -- I DON'T EVEN WANT TO CALL IT RESISTANCE.

5    EITHER ON HIS BACK, HE CAN'T BREATHE.  HE ROLLS TO HIS SIDE

6    BECAUSE HE CAN'T BREATHE.  THEY ROLL HIM BACK OVER.  AND ANY, I

7    THINK, MOVEMENT AND TENSING UP IS BECAUSE HE CAN'T BREATHE.  I

8    MEAN, HUMANS CAN'T JUST LAY LIMP AS THEY'RE BEING CRUSHED TO

9    DEATH.

10            AND, SO, HONESTLY, I'M STRUCK BY HOW COOPERATIVE AND

11   COMPLIANT HE WAS, GIVEN THE NUMBER OF CASES I'VE SEEN.  AND TO

12   ME, IT'S DISTRESSING TO WATCH THE VIDEO.  I THINK ANY

13   REASONABLE OFFICER WOULD HAVE INTERVENED.

14            **THE COURT:**  OKAY.  SO, MR. ROLLAN, I'M GOING TO LET

15   YOU WRAP UP, THEN I'LL LET MR. BUELNA WRAP UP AS WELL.

16            **MR. ROLLAN:**  SURE.  AS -- AS WE INDICATED IN OUR

17   MOVING PAPERS, YOUR HONOR, WE BELIEVE THE OFFICER'S ACTIONS IN

18   THIS CASE IN DEALING WITH MR. NELSON WAS REASONABLE UNDER THE

19   CIRCUMSTANCES.

20            FIRST, WE'D LIKE TO ADDRESS THE ARGUMENT THAT

21   PLAINTIFF JUST BROUGHT UP, THAT MR. NELSON WAS NOT WANTED FOR

22   ANY CRIME.  TRUE, THAT WAS INITIALLY THE CASE WHEN THE 5150

23   CALL WAS PLACED FOR THE CALL FOR SERVICE.  HOWEVER, WHEN THEY

24   WERE AT THE (INDISCERNIBLE) COURT LOCATION AND THERE WAS A

25   PARAMEDICS-PLUS DELAY, MR. NELSON DID START KICKING THE INSIDE

1   OF OFFICER HALL'S VEHICLE MULTIPLE TIMES DESPITE THE OFFICER'S

2   REPEATED ORDERS TO STOP.  AND THAT'S THE REASON WHY THEY DECIDE

3   TO RELOCATE TO CHABOT COLLEGE PARKING LOT, TO HAVE THE

4   POSSIBILITY OF APPLYING THE WRAP DEVICE IN A MORE OPEN AREA.

5            ONCE THEY WERE AT CHABOT COLLEGE PARKING LOT,

6   MR. NELSON AGAIN KICKED THE INSIDE OF OFFICER HALL'S VEHICLE

7   THREE TIMES.  AND OFFICER MCCREA ORDERED HIM TO STOP, AND IT'S

8   CLEARLY SHOWN IN THE BODY CAM VIDEOS, AND MR. NELSON KICKED

9   AGAIN THREE TIMES IN DISOBEYANCE OF OFFICER MCCREA'S ORDERS.

10            AND SO THE OFFICERS RESPONDED TO MR. NELSON'S

11  BEHAVIOR AND NOT NECESSARILY WHETHER OR NOT HE WAS WANTED FOR

12  ANY CRIME AT THE VERY BEGINNING OF THE INCIDENT, BUT IT EVOLVED

13  INTO ONE WHERE MR. NELSON DID EXHIBIT THAT TYPE OF BEHAVIOR

14  WHICH NECESSITATED THE OFFICER'S USE OF THE WRAP DEVICE.

15            **THE COURT:**  AND I'M LESS CONCERNED, MR. ROLLAN, ABOUT

16  THE FACT THAT THE OFFICERS WANTED TO GET HIM UNDER CONTROL.

17  I'M MORE CONCERNED ABOUT WHAT HAPPENED ONCE THE OFFICERS WERE

18  APPLYING THE WRAP DEVICE AND WHAT THEY DID.  I THINK THAT'S

19  WHAT THIS CASE IS REALLY GOING TO BE HINGING ON.

20            **MR. ROLLAN:**  RIGHT.

21            **THE COURT:**  I UNDERSTAND THE TOTALITY OF THE

22  CIRCUMSTANCES IS IMPORTANT, AND, BELIEVE ME, NONE OF THOSE

23  FACTS ESCAPE ME.  I'M AWARE OF THAT.

24            **MR. ROLLAN:**  AND SO WHEN REVIEWING THE BODY CAM

25  VIDEO, THE ENTIRE INTERACTION OF HAVING MR. NELSON GET ON THE

1   GROUND AND HAVING HIM TURN OVER WAS REALLY FOUR AND A HALF,

2   MINUTES, RIGHT?

3            AND SO WHEN MR. NELSON GOT ON THE GROUND, HE REFUSED

4   TO PRESENT HIS BODY IN A WAY THAT ALLOWED THE OFFICERS TO

5   EASILY APPLY THE WRAP DEVICE.  IN FACT, ALTHOUGH PLAINTIFF

6   DISPUTES THE CHARACTERIZATION OF MR. NELSON AS BEING RESISTANT,

7   ALL THE OFFICERS IN THIS CASE TESTIFIED THAT MR. NELSON WAS

8   OFFERING SOME FORM OF RESISTANCE IN THAT HE WAS TENSING HIS

9   BODY.  HE WAS NOT ALLOWED EVEN TO MOVE HIS LEGS, AND THAT MADE

10  IT DIFFICULT FOR THEM TO APPLY THE LEG AND THE ANKLE PORTION OF

11  THE WRAP DEVICE QUICKLY.

12           SO OFFICER HALL AND SHANNON, WHO WERE BOTH AT THE TOP

13  OF MR. NELSON, APPLIED THE PRESSURE THAT THEY THOUGHT WAS

14  REASONABLE IN ORDER TO NOT ALLOW MR. NELSON TO MOVE DURING THE

15  APPLICATION OF THE LEG PORTION OF THE WRAP DEVICE.

16           AND SO I THINK, WHEN LOOKING AT THIS WHOLE SNAPSHOT,

17  THIS FOUR AND A HALF MINUTES OF THE INCIDENT, I THINK THE

18  OFFICERS RESPONDED TO MR. NELSON'S PHYSICAL MANIFESTATIONS, HIS

19  BEHAVIORS.  DESPITE THE FACT HE MAY HAVE SAID HE COULDN'T

20  BREATHE, HE WAS STILL MOVING HIS BODY AFTER THAT, AND HE WAS

21  NOT PRESENTING HIS BODY IN A WAY THAT ALLOWED THE OFFICERS TO

22  QUICKLY APPLY THE WRAP.

23           AND SO TO THAT END, THE OFFICERS SIMPLY RESPONDED TO

24  MR. NELSON'S PHYSICAL BEHAVIORS, AND, ULTIMATELY, HE BECAME

25  UNCONSCIOUS, AND RIGHT AWAY OFFICER SHANNON CALLED FOR THE CODE

1   THREE EMERGENCY MEDICAL RESPONSE AND TURNED HIM OVER ONCE THE

2   LEG PORTION OF THE WRAP DEVICE WAS COMPLETED.

3           **THE COURT:**  I THINK THE CONCERN THAT THE

4   PLAINTIFFS -- I CAN SEE MR. BUELNA -- I CAN SEE THE THOUGHT

5   BLOWING UP IN HIS HEAD RIGHT AWAY, IT WAS NOT ONE MINUTE AND 20

6   SECONDS LATER, AND I THINK THAT'S WHAT THIS CASE IS GOING TO

7   HINGE ON, ULTIMATELY, SO -- BUT THANK YOU.

8           MR. BUELNA, I STOLE YOUR THUNDER.

9           **MR. BUELNA:**  THANK YOU.  I THINK YOU HIT THE NAIL ON

10  THE HEAD, YOUR HONOR.

11          I THINK YOU TAKE ALL THAT AND WE STOP AT WHEN THE

12  ANKLE HOBBLE WAS APPLIED, HE'S HANDCUFFED.  MICHELLE HALL NOTES

13  THAT HE'S UNCONSCIOUS, CAN'T TELL IF HE'S BREATHING.

14  OFFICER -- OFFICER SHANNON DID CALL CODE THREE, BUT THEN

15  CONTINUED TO APPLY PRESSURE TO HIS BACK, ORDERED THE LEG

16  PORTION -- SO HE'S ALREADY GOT THE ANKLE ON -- ORDERED THE LEG

17  PORTION OF THE WRAP TO BE APPLIED WHEN HE'S NOT EVEN MOVING AND

18  HE'S CLEARLY UNCONSCIOUS.  BY THE TIME THEY FLIP HIM OVER,

19  THERE'S BLOOD OOZING FROM HIS FACE.

20          SO I THINK THAT UNDER THE FOURTH AMENDMENT -- AND

21  THIS IS -- THE STANDARD IS NO REASONABLE -- IT'S NOT EVEN JUST

22  ANY JUROR AROUND THE COUNTRY, BUT NO REASONABLE JUROR COULD

23  FIND FOR DEFENDANT SHANNON IN THIS CASE.  AND I THINK THAT'S

24  THE STANDARD THAT SHOULD BE USED, AND IF WE USE THAT STANDARD,

25  I THINK THE COURT IS -- HAS TO FIND FOR PLAINTIFF ON THE

1  EXCESSIVE FORCE CLAIM AGAINST DEFENDANT SHANNON.

2            AND, ALSO, I THINK, TOO, THE ADA, TOO, ALSO COMES

3  INTO PLAY, BECAUSE HE'S A PARANOID SCHIZOPHRENIC.  IT'S

4  UNDISPUTED.  HE WAS -- THEY OWED HIM A REASONABLE ACCOMMODATION

5  FOR THAT DISABILITY, AND PART OF THAT IS UNDERSTANDING THAT

6  MENTALLY ILL PEOPLE DON'T RESPOND THE SAME WAY AS OTHER PEOPLE.

7            **THE COURT:**  WHAT WAS THE ACCOMMODATION THEY OWED HIM?

8            **MR. BUELNA:**  KIND OF THE SAME FOURTH AMENDMENT

9  ACCOMMODATION THEY OWED HIM WHICH IS, TOO, IF HE'S EXPRESSING

10  ING MEDICAL DISTRESS, THEY SHOULD ALLEVIATE THAT IN THAT ANY

11  SORT OF RESTRAINED -- ANY SORT OF A RESISTANCE THAT COULD BE

12  INTERPRETED AS RESISTANCE MAY NOT ACTUALLY BE HIM RESISTING,

13  BUT AS A RESULT OF HIS MEDICAL CONDITION.

14            **THE COURT:**  OKAY.

15            SO LET ME TELL YOU WHAT I'M THINKING ABOUT THIS.

16  THIS IS GOING TO TRIAL NO MATTER WHAT, BECAUSE AT LEAST ON

17  CAUSATION IT'S DISPUTED.  I'M REALLY STRUGGLING WITH THIS IDEA

18  ABOUT HOW I HANDLE WHAT I THINK ABOUT A JUROR AND WHAT I THINK

19  THEY WOULD DO, AND ESPECIALLY GIVEN WHAT THE NINTH CIRCUIT SAID

20  ABOUT THE FACT THAT REASONABLENESS UNDER EXCESSIVE FORCE IS NOT

21  SOMETHING THE COURT CAN EASILY DECIDE.  I'M LEANING TOWARDS

22  SENDING THIS TO TRIAL TO THE JURORS, BUT I'M NOT A HUNDRED

23  PERCENT SURE.

24            I'M GOING TO GO BACK AND LOOK AT EVERYTHING, AND I

25  WILL -- I THINK I'M GOING TO THINK ABOUT THIS MINUTE BY MINUTE,

1  BECAUSE I THINK YOU HAVE TO TAKE THIS CASE LITERALLY MINUTE BY

2  MINUTE AND GO BACK AND TAKE ANOTHER LOOK AT EVERYTHING AGAIN.

3         BUT THAT'S WHAT I'M LEANING TOWARDS, JUST TO LET YOU

4  KNOW.

5         SO I DO UNDERSTAND WE HAVE A CASE MANAGEMENT

6  CONFERENCE.  LET'S HANDLE THAT NOW BECAUSE, MR. ROLLAN, I

7  UNDERSTAND YOU'RE LEAVING, AND YOU'RE ASKING FOR A CONTINUANCE

8  AND THE PLAINTIFFS ARE OBJECTING TO THAT.

9         **MR. ROLLAN:**  YES, YOUR HONOR.  SO I RECENTLY GOT AN

10  OFFER FOR EMPLOYMENT ON JANUARY 31ST, AND I NOTIFIED MY

11  SUPERVISOR, MIKE LAWSON, ON FEBRUARY 1ST THAT I WAS DEPARTING.

12         SHORTLY THEREAFTER I CALLED PATRICK BUELNA TO ASK FOR

13  A STIPULATION TO MODIFY THE SCHEDULING ORDER AND CONTINUE THE

14  TRIAL DATE, WHICH IS CURRENTLY SET FOR JUNE 4TH, 2019.

15         IN OUR MOVING PAPERS, DEFENDANTS POINTED OUT THIS IS

16  SIMPLY NOT ENOUGH TIME FOR NEW COUNSEL TO GET UP TO SPEED ON

17  THIS MATTER, WHICH HAS BEEN LITIGATED FOR ABOUT THREE YEARS

18  NOW, AND THE AMOUNT OF INFORMATION AND DEPOSITIONS AND

19  DISCOVERY THAT'S BEEN PRODUCED IN THIS CASE -- I THINK WE HAVE

20  A MARCH 15, 2019, OBLIGATION UNDER THE CURRENT SCHEDULING TO

21  PROVIDE -- I THINK IT'S THE MEET AND CONFER ABOUT TRIAL ISSUES.

22  AND SO I THINK THAT'S JUST NOT ENOUGH TIME FOR NEW COUNSEL TO

23  GET ACCLIMATED TO THIS CASE.  AND THAT'S -- FOR THOSE REASONS,

24  WE BELIEVE THAT A CONTINUANCE OF THE TRIAL DATE SHOULD BE

25  GRANTED.

1          **THE COURT:**  AND WHAT IS THE DATE THAT YOU RECOMMEND

2    OR THAT YOU'RE ASKING FOR, BECAUSE I'M NOT SURE THAT I'M GOING

3    TO GIVE YOU ANY --

4          **MR. ROLLAN:**  RIGHT.  IN OUR JOINT CASE MANAGEMENT

5    STATEMENT PLAINTIFFS DID AGREE -- OF COURSE, THEY OBJECTED TO

6    THE CONTINUANCE ALTOGETHER BUT PLAINTIFFS DID AGREE THAT A

7    NOVEMBER 4, 2019, TRIAL DATE WOULD BE ACCEPTABLE, OR, IN THE

8    ALTERNATIVE, MARCH OF 2020 -- OR MARCH -- YEAH.

9          **THE COURT:**  MELINDA, AM I AVAILABLE IN NOVEMBER THAT

10   FIRST WEEK?

11         **THE CLERK:**  WE'RE ON CRIMINAL DUTY.

12         **THE COURT:**  I DON'T WANT TO WAIT UNTIL MARCH 2020.

13   ARE THOSE THE ONLY DATES THAT YOU WOULD BE AVAILABLE FOR TRIAL?

14         **MR. BUELNA:**  JUST TO NOTE THAT THE PLAINTIFF'S MOTHER

15   IN THIS CASE IS ELDERLY, AND SHE'S BEEN WAITING FOR YEARS NOW

16   FOR HER DAY IN COURT, AS WELL AS THE SON WHO WANTS TO HOLD

17   ACCOUNTABLE AND TO HAVE HIS DAY IN COURT.  I JUST WANT TO NOTE

18   FOR THE COURT THAT HE GOES TO COLLEGE IN THE VERY PARKING LOT

19   WHERE HIS FATHER WAS KILLED, AND SO HE DESERVES HIS DAY IN

20   COURT.

21         AND TO PUT IT OFF AGAIN -- MR. LAWSON WAS AN ATTORNEY

22   ON RECORD THE ENTIRE TIME.  HE ATTENDED BOTH OF THE SETTLEMENT

23   CONFERENCES AND PARTICIPATED.  AND SO I REALLY -- PLAINTIFF

24   VEHEMENTLY OBJECTS TO MOVING THE DATE, BUT IF THE COURT IS SO

25   INCLINED, OBVIOUSLY, WE WILL ACCOMMODATE THAT.

1      **THE COURT:**  I'M WILLING TO GIVE A VERY SHORT

2  CONTINUANCE, BUT I WOULDN'T PUT IT TO MARCH 2020.  I THINK

3  THAT'S REALLY UNFAIR TO THE PLAINTIFFS, AND I CAN'T DO IT IN

4  NOVEMBER OF 2019 BECAUSE I'M ON CRIMINAL DUTY.  SO HERE'S WHAT

5  I WOULD SUGGEST:

6      I CAN GIVE YOU DIFFERENT DATES IN JULY, AUGUST,

7  SEPTEMBER, AND OCTOBER, AND WE CAN SIT HERE AND GO THROUGH THEM

8  AND SEE IF YOU'RE AVAILABLE.  I AM WILLING TO GIVE A SHORT

9  CONTINUANCE TO THE DEFENDANTS, BUT I'M NOT -- I'M NOT GOING TO

10  MOVE IT PAST -- IT'S GOING TO TAKE PLACE IN 2019.  LET'S PUT IT

11  THAT WAY.

12      **MR. ROLLAN:**  AND I THINK, YOUR HONOR, JUST FOR THE

13  RECORD, ANOTHER ISSUE REGARDING THIS TRIAL IS THE DISPOSITION

14  OF THE 14TH AMENDMENT CLAIM, WHICH SHOULD BE ADDRESSED -- YOU

15  KNOW, WOULD BE ADDRESSED IN THE ORDER IN THE SUMMARY JUDGMENT

16  MOTION.  THAT IS THE ONLY CLAIM THAT PLAINTIFF'S MOTHER REALLY

17  HAS IN THIS CASE, AND IF THE COURT DISPOSES OF THAT CAUSE OF

18  ACTION IN ITS ORDER, THEN THAT IS ANOTHER PROCEDURAL ASPECT

19  THAT, YOU KNOW, SHOULD BE CONSIDERED.

20      **THE COURT:**  I UNDERSTAND.  BUT AS A PRACTICAL MATTER,

21  I THINK THE FAMILY HAS BEEN WAITING -- WHETHER THEY'RE

22  PLAINTIFFS OR NOT --

23      **MR. ROLLAN:**  SURE.

24      **THE COURT:**  JUST AS MATTER OF THE WAY WE LIKE TO RUN

25  OUR COURT SYSTEM, IS THAT WE LIKE TO TAKE INTO CONSIDERATION

```
1    THE CONCERNS OF FAMILY MEMBERS OF WHEN SOMEONE HAS DIED, AND WE

2    NEED TO GET SOME CLOSURE FOR THEM AS WELL, WHETHER THEY'RE

3    FORMALLY PLAINTIFFS OR NOT.

4            SO HERE'S WHAT I'M GOING TO RECOMMEND.  CAN YOU GO

5    INTO THE HALLWAY AND LOOK AT ANY DATES BETWEEN JULY, AUGUST,

6    SEPTEMBER, OCTOBER, AND I'LL CALL YOU BACK TO SEE WHETHER OR

7    NOT THERE ARE ANY DATES IN 2019, EVEN DECEMBER OF 2019, THAT

8    YOU CAN ACTUALLY SET A NEW TRIAL DATE.  AND THEN I'LL LOOK AT

9    MY CALENDAR AS WELL.  IT'S THE KIND OF THING I DON'T WANT TO

10   FORCE EVERYONE TO LISTEN TO WHILE WE'RE GOING THROUGH IT.  BUT

11   IT'S NOT GOING TO BE 2020.

12           MR. BUELNA:  THANK YOU, YOUR HONOR.

13           MR. ROLLAN:  THANKS, YOUR HONOR.

14           THE COURT:  OKAY.  WE WILL PASS YOU AND COME BACK ON

15   THE CASE MANAGEMENT ISSUE.

16           (RECESS TAKEN FROM 10:01 A.M. UNTIL 10:29 A.M.)

17           THE CLERK:  RECALLING CIVIL MATTER 16-7222, NELSON

18   VERSUS CITY OF HAYWARD.

19           MR. ROLLAN:  GOOD MORNING AGAIN, YOUR HONOR.

20           SO THE PARTIES HAVE MET AND CONFERRED AND IDENTIFIED

21   OCTOBER 21ST --

22           THE COURT:  OKAY.

23           MR. ROLLAN:  -- AS A PLAUSIBLE --

24           THE COURT:  MELINDA, AM I AVAILABLE THAT WEEK?

25           THE CLERK:  LET'S SEE.
```

```
 1              THE COURT:  AND I START TRIALS ON TUESDAY, BECAUSE I
 2   HAVE LAW AND MOTION ON MONDAY, BY THE WAY, SO IT WOULD BE --
 3              THE CLERK:  SO THE 22ND WE HAVE ONE TRIAL SCHEDULED
 4   RIGHT NOW.
 5              THE COURT:  LET ME SEE.  WHICH ONE IS IT?
 6              THE CLERK:  @@NIGROW VERSUS AHERN RENTALS.
 7              THE COURT:  OKAY.  THAT WILL BE (INDISCERNIBLE).
 8              I WILL PUT YOU ON OCTOBER 22ND, AND I'LL PUT YOU
 9   FIRST PRIORITY.
10              MR. ROLLAN:  GREAT.
11              THE COURT:  I HAVE ANOTHER MATTER ON THAT DAY, BUT I
12   THINK IT'S GOING AWAY.
13              AND WE HAVE SEVEN DAYS, RIGHT?
14              MR. ROLLAN:  YES.
15              THE COURT:  ALL RIGHT.  SO WHAT I'M GOING TO DO THEN
16   IS I WILL ISSUE A NEW ORDER TO YOU FOLKS WITH NEW BRIEFING
17   DATES FOR THE MEET AND CONFER, AND THEN MOTIONS IN LIMINE, AND
18   THE PRETRIAL CONFERENCE.  AND SO -- BUT, BASICALLY, YOU KNOW MY
19   SCHEDULE.  IT'S A MONTH BEFORE IS A PRETRIAL CONFERENCE.  A FEW
20   WEEKS BEFORE IS WHEN YOU SUBMIT THE MILS, AND THEN EVERYTHING
21   GETS BACKED UP FROM THERE.
22              BUT, OTHERWISE, THEN I'LL WORK ON THE SUMMARY
23   JUDGMENT ORDER.  WE ARE GOING TO TRIAL ANYWAY.  ONE WAY OR
24   ANOTHER WE'RE GOING TO GO TRIAL.  IT'S JUST A QUESTION OF HOW
25   MUCH IS GOING TO GO TO TRIAL.  OKAY?
```

1          **MR. ROLLAN:**  GREAT.

2          **THE COURT:**  ANYTHING ELSE WE NEED TO TALK ABOUT THIS

3   CASE ON CASE MANAGEMENT ISSUES OR ANYTHING?

4          **MR. BUELNA:**  NO.

5          **MR. ROLLAN:**  I DON'T THINK SO, YOUR HONOR.

6          **THE COURT:**  ALL RIGHT.  THANK YOU FOR MEETING AND

7   CONFERRING.  I REALLY APPRECIATE THE COOPERATION.

8          **MR. BUELNA:**  THANK YOU, YOUR HONOR.

9          **MR. ROLLAN:**  THANK YOU, YOUR HONOR.

10         **THE COURT:**  MR. ROLLAN, GOOD LUCK.

11         **MR. ROLLAN:**  THANK YOU.

12          (PROCEEDINGS ADJOURNED AT 10:30 A.M.)

1

<u>**CERTIFICATE OF TRANSCRIBER**</u>

2

3       I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4   TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5   THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6   U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7   PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8   ABOVE MATTER.

9       I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10  RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11  WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12  FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13  ACTION.

14

15

16              JOAN MARIE COLUMBINI

17              APRIL 4, 2019

18

19

20

21

22

23

24

25